**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NAHEE ALLEN,**<br>        *Plaintiff,*<br><br>        **v.**<br><br>**MARINE ACQUISITION CORPARATION/MARINE ACQUISITION (US) INCORPORATED t/a DOMETIC; DOMETIC CORPORATION; AND TEMP STAR STAFFING LTD,**<br>        *Defendants.* | **Civil No. 24-5417** |

**MEMORANDUM**

**Costello, J.**                                                    **February 27, 2026**

Plaintiff Nahee Allen, an African-American male, is a former employee of Defendants Marine Acquisition Corporation and Dometic Corporation (the "Dometic Defendants"), where he worked as an assembler in a warehouse.  Plaintiff obtained employment with the Dometic Defendants through Defendant Temp Star Staffing ("Temp Star"), a staffing agency.  Plaintiff alleges that he was subject to sexual assault and sex and race-based discrimination and retaliation while he worked at the warehouse.  He sued Defendants, alleging various claims under 42 U.S.C. § 1981, Title VII, and the Pennsylvania Human Relations Act ("PHRA").  The Dometic Defendants moved to dismiss the PHRA and Section 1981 claims against them (Counts II, VI, and VII).  Temp Star moved to dismiss the PHRA and Title VII claims against it (Counts III, IV, and V).  For the reasons that follow, the Court will grant both motions.

## I.    BACKGROUND

Plaintiff alleges that, after about a week on the job as a warehouse assembler for Dometic, a male shift lead "sexually assaulted him and touched his male private area."  ECF No. 5 ¶ 16.  Plaintiff immediately objected to the touching and reported the incident to both Dometic and Temp Star.  *Id.* ¶¶ 17-19.  After reporting, Plaintiff was under the impression that he would no longer have to work with the shift lead.  *Id.* ¶ 20.  However, a couple days later, the same shift lead was put in charge of Plaintiff's assembly line.  *Id.*  Plaintiff made another report to Defendants, explaining that he felt uncomfortable being under the shift lead's supervision after the alleged assault.  *Id.*

The shift lead proceeded to tell other employees that Plaintiff reported him to human resources.  *Id.* ¶ 22.  Plaintiff subsequently experienced "ridicule from his coworkers" and was "mocked as 'the new black boy' from line 510" who reported the shift leader to human resources. *Id.* ¶ 23.  Plaintiff registered another complaint with a warehouse supervisor.  *Id.* ¶ 25.  He expressed discomfort that the shift supervisor discussed his confidential report about the alleged assault with Plaintiff's coworkers.  *Id.* ¶¶ 25-26.  He also raised concerns that his coworkers were calling him "the new black boy," as Plaintiff was one of only a few black employees.  *Id.* ¶ 25. The supervisor suggested that Plaintiff "opened the door to this ridicule" by reporting the alleged assault in the first instance but said that she would discuss his complaint with human resources the following Monday.  *Id.* ¶ 26.  However, the same day as Plaintiff made this follow-up report to the warehouse supervisor, he was terminated.  *Id.* ¶ 27.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Assessing plausibility under *Twombly* requires three steps.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (internal quotations and alterations omitted).  Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, the Court must accept as true all "'well-pleaded factual allegations,'" draw all reasonable inferences from those allegations, and "'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations omitted).  "If the well-pleaded facts do nut nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, 23cv4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

III.    **DISCUSSION**

A.    **Failure to Exhaust Administrative Remedies Under the PHRA**

Both the Dometic Defendants and Temp Star moved to dismiss the PHRA claims.  *See* ECF No. 11-1 at 4-5; ECF No. 10 at 13-16.  They argue that Plaintiff failed to exhaust his administrative remedies because he did not wait to file this action until the expiration of the Pennsylvania Human Relations Committee's ("PHRC") one-year exclusive jurisdiction period— a point which Plaintiff concedes.  ECF No. 15-1 at 7-8; ECF No. 14-1 at 11. Defendants are correct.

"A plaintiff who wishes to bring a PHRA claim in civil court must first file an administrative complaint with the PHRC." *Tlush v. Manufacturers Res. Ctr.*, 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997)). The PHRC then has exclusive jurisdiction for one year to investigate and attempt to resolve the complaint through reconciliation. 43 P.S. § 962(c)(1). Civil suits filed prior to the expiration of this one-year period may be dismissed for failure to exhaust administrative remedies. *Tlush*, 315 F. Supp. 2d at 656-57.

Plaintiff dual-filed charges of discrimination with the PHRC against all Defendants on or before July 2, 2024 and on or before October 2, 2024. ECF No. 5 ¶ 7; *id.* at 2 n.1. That means the PHRC had exclusive jurisdiction over these claims until July 2, 2025 and October 2, 2025, respectively. *See* 43 P.S. § 962(c)(1). Plaintiff filed this action on October 9, 2024, *see* ECF No. 1, and filed his amended complaint on November 25, 2024, *see* ECF No. 5. Both dates fall several months before the end of the PHRC's exclusive statutory jurisdiction over Plaintiff's PHRA claims.

Although the PHRC's exclusive jurisdiction period has now expired, the passage of time cannot cure Plaintiff's failure to exhaust his administrative remedies. The law in this District is clear that the administrative exhaustion requirement is more than a mere technicality. Rather, "'invocation of the [administrative] procedures set forth in the [PHRA] entails more than a filing of a [charge]; it includes the good faith use of procedures provided for disposition of the complaint.'" *Taylor v. Se. Pa. Transp. Auth.*, 23cv2140, 2024 WL 3203318, at *16 (E.D. Pa. June 27, 2024) (quoting *Lyons v. Springhouse Corp.*, 92cv6133, 1993 WL 69515, at *3 (E.D. Pa. Mar. 10, 1993)) (further citations omitted). Accordingly, when a plaintiff intentionally files a civil claim before the expiration of the one-year exclusive jurisdiction period, most courts find

4

that the plaintiff "did not engage in the administrative process in good faith." *See id.* at \*17 (granting summary judgment on PHRA claims because plaintiff purposefully filed suit prior to one-year period); *see also, e.g.*, *Tlush*, 315 F. Supp. 2d at 656-57 (granting motion to dismiss based on plaintiff's failure to wait full year to file civil suit); *Hill v. KLM Rest. Corp.*, 24cv01121, 2024 WL 2867785, at \*2 (E.D. Pa. June 6, 2024) (same).

Plaintiff here admits that he purposefully did not wait the requisite year before filing his PHRA claims in this Court. *See* ECF No. 15-1 at 7-8 (acknowledging that "the PHRC claims remain pending" and requesting that the Court "dismiss the PHRA claims without prejudice to Plaintiff" so he may refile them once the year has expired). He therefore did not engage in the administrative dispute resolution process in good faith. Accordingly, the Court will dismiss Plaintiff's PHRA claims without prejudice.

**B.    Section 1981 Discrimination Claim (Dometic Defendants)**

The Dometic Defendants argue that Plaintiff has failed to properly state a claim for Section 1981 discrimination. ECF No. 11-1 at 5-9. To plead a discrimination claim under Section 1981, a plaintiff must allege (1) that he belongs to a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned at least one of the activities enumerated in Section 1981—e.g., the performance or termination of a contract. *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017). Here, only the second element is in dispute. *See* ECF No. 11-1 at 5-7.

"A plaintiff may raise an inference of discrimination in various ways, including by alleging that similarly situated comparators were treated more favorably by their employer, similar racial discrimination against other employees, or direct evidence of racial animus such as discriminatory statements . . . by supervisors." *Riley v. Borough of Eddystone*, 24cv1835, 2024

WL 4137310, at *3 (E.D. Pa. Sept. 10, 2024) (citing *Golod v. Bank of Am. Corp.*, 403 F. App'x 669, 703 n.2 (3d Cir. 2010)).  "[A] lack of comparative evidence is not fatal to a plaintiff's prima facie case." *Blunt v. Lower Marion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011). "Comparative evidence is just one manner in which a plaintiff can satisfy the prima facie requirement" of an inference of intentional discrimination. *Id.*  At bottom, a plaintiff must plausibly allege that "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also Williams v. Tech Mahindra (Americas) Inc.*, 70 F.4th 646, 651-52 (3d Cir. 2023) (explaining that *Comcast* affirmed need to plead but-for causation in Section 1981 cases).

Plaintiff fails to plead sufficient facts alleging that the Dometic Defendants intentionally discriminated against him on the basis of race.  The only race-based allegation in the complaint is that Plaintiff's coworkers mocked him as "the new black boy," and that he reported this mocking to a warehouse supervisor.  ECF No. 5 ¶¶ 23, 25.  Defendants argue that these are "stray remarks by non-decisionmakers" and "cannot support, on their own, an inference of discriminatory intent."  ECF No. 11-1 at 7.  Defendants are correct.

Discriminatory comments by non-decisionmakers "may properly be used to build a circumstantial case of discrimination." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995).  However, the law is clear that, absent other circumstantial evidence, "stray remarks by non-decisionmakers" are "inadequate to support an inference of discrimination by an employer." *Bondaruk v. PNC Bank*, 20cv5979, 2022 WL 4120281, at *7 (E.D. Pa. Sept. 9, 2022) (citing *Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 521 (3d Cir. 1997)); *accord Carilli v. Mut. of Omaha Ins. Co.*, 67 F. App'x 133, 135 (3d Cir. 2003).  That is because there must be some allegations connecting the stray remarks to the adverse employment decision.  *See Peebles v. Chain IQ*

*Americas Inc.*, No. 25-1419, 2026 WL 281174, at *2 (3d Cir. Feb. 3, 2026) (affirming district court's dismissal of 1981 discrimination claim because plaintiff "failed to present factual allegations linking [defendant's] termination decision to Plaintiff's race").

Courts in this Circuit routinely dismiss discrimination claims under Section 1981 for failing to allege any facts linking stray remarks by non-decisionmakers to a defendant's adverse employment action. For instance, in *Angelini v. U.S. Facilities, Inc.*, the plaintiff alleged that he was "the target of frequent jokes about his identified personal characteristics, as well as physical intimidation, verbal abuse and threats[.]" 17cv4133, 2018 WL 3155995, at *6 (E.D. Pa. June 27, 2018). The court found this allegation insufficient to support a claim of discrimination, explaining that the plaintiff failed to "allege or point to any facts" connecting these comments to the defendant's decision to terminate him, such as evidence of similarly situated comparators. *Id.*

Similarly, in *Overton v. Meadows at Summit for Nursing & Rehabilitation LLC*, the plaintiff alleged that one of her coworkers called her a "black bitch" and a racial slur, which she reported to a supervisor. 25cv870, 2025 WL 1888217, at *1 (M.D. Pa. July 8, 2025). The court dismissed the plaintiff's Section 1981 claim because the complaint did not contain any allegations suggesting the coworker was a decisionmaker such that her remarks could be "shown to have any connection to the [d]efendant's adverse action." *Id.* at *3; *compare to McGlotten v. Goodwill Indus. of Del. & Del. Cnty., Inc.*, 23cv2926, 2023 WL 8622341, at *4 (E.D. Pa. Dec. 12, 2023) (denying motion to dismiss Section 1981 discrimination claim where plaintiff alleged "anti-Black enmity espoused from [defendant's] CEO . . . through the chain of command," which "plausibly suggest[ed] race motivated the firing decision").

Like the plaintiffs in *Angelini* and *Overton*, Plaintiff here fails to allege any facts connecting the mocking remarks by his coworkers to the Dometic Defendants' decision to terminate him.  He does not allege any racial remarks by supervisors, disparate treatment of similarly situated individuals outside of his protected class, or any other circumstantial evidence supporting an intent to discriminate.  *See generally* ECF No. 5.[1]  The Court will accordingly grant the Dometic Defendants' motion to dismiss the Section 1981 discrimination claim.

### C.    Section 1981 Retaliation Claim (Dometic Defendants)

The Dometic Defendants also argue for dismissal of Plaintiff's Section 1981 retaliation claim.  To plead a retaliation claim under Section 1981, a plaintiff must allege (1) that he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection between his participation in the protected activity and the adverse employment action.  *Castleberry*, 863 F.3d at 267.  Only the first and third elements are in dispute here.  *See* ECF No. 11-1 at 7-9.

To plead that he engaged in protected conduct under Section 1981, a plaintiff must allege that he "'had a reasonable belief that [his] employer was engaged in an unlawful employment practice and that the employer retaliated against [him] for protesting against that practice.'" *Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 560 (E.D. Pa. 2021) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 865 (3d Cir. 1990)); *see id.* (explaining that standard set forth in *Drinkwater*, a Title VII case, applies to Section 1981 cases).  In other words, the question is

---

[1] In his opposition brief, Plaintiff claims that he pleaded that "from almost the date he started he was treated differently from other co-workers[.]"  ECF No. 15-1 at 5.  However, as Defendants point out, this allegation is not actually in the amended complaint.  *See* ECF No. 16-1 at 2-3.  And even if it was, absent any more information about those coworkers and the alleged disparate treatment, this allegation would be entirely speculative and conclusory.  *See Iqbal*, 556 U.S. at 679 (conclusory allegations not afforded the assumption of truth).

whether Plaintiff "lodg[ed] a protest about what [he] reasonably believed was discriminatory behavior" by Defendants.  That belief must be "'objectively reasonable.'"  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193-94 (3d Cir. 2015) (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008)).

Plaintiff here has not plausibly alleged that he was engaged in protected conduct when he reported the mocking "black boy" remarks to his supervisor.  *See* ECF No. 5 ¶¶ 23, 25.  There are two shortcomings with Plaintiff's allegations.

First, the mocking remarks by Plaintiff's coworkers do not amount to discriminatory conduct.  While the comments by his coworkers are certainly inappropriate, they are more akin to "[g]eneral complaints of unfair treatment," which do not translate into a charge of unlawful discrimination.  *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (per curiam); *see also Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995); *compare to, e.g.*, *Riley v. Borough of Eddystone*, 24cv1835, 2024 WL 4844794, *4 (E.D. Pa. Nov. 20, 2024) (plaintiff adequately pleaded he engaged in protected activity when he complained of repeated racial slurs used in the workplace); *Lara v. Samuel Adams Pa. Brewing Co., LLC*, 20cv0498, 2020 WL 5211206, at *2, *10 (E.D. Pa. Sept. 1, 2020) (same).

Second, Plaintiff fails to allege that he complained about *Defendants* engaging in any discriminatory employment practices.  *See Curry*, 541 F. Supp. 3d at 560 (to plead he engaged in protected conduct under Section 1981, a plaintiff must allege that his "*employer* was engaged in an unlawful employment practice" and plaintiff complained about that practice) (emphasis added).  In cases where courts have found that plaintiffs adequately pleaded that they engaged in protected activity, plaintiffs have typically alleged reporting that the employer itself—rather than other employees—engaged in discrimination.  For instance, in *Estate of Olivia ex rel. McHugh v.*

*New Jersey*, the court found that the plaintiff pleaded he engaged in protected activity under Section 1981 when he complained about a supervisor's practice of racial profiling in their police work. 604 F.3d 788, 798 (3d Cir. 2010). In *Curry v. Devereux Foundation*, the plaintiff alleged that she raised concerns that a degrading racial stereotype about African-American women "unlawfully played a part in Defendant's promotion and hiring decisions." 541 F. Supp. 3d at 561. The court found that this constitutes protected activity under Section 1981. *Id.* (denying motion to dismiss Section 1981 retaliation claim).

In contrast, Plaintiff here does not allege that he complained of any discriminatory employment practice on the part of the Dometic Defendants. *See generally* ECF No. 5. He does not, for instance, allege that he reported that any of his supervisors made racially discriminatory remarks, or that management engaged in discriminatory hiring practices. Nor does he allege that coworkers used racially degrading language and that Defendants had a practice of ignoring or encouraging that conduct. *See Lara*, 2020 WL 5211206, at *10 (plaintiff engaged in protected activity when he reported what he perceived as a "general failure of supervisors to take [plaintiff's] multiple reports" of racially degrading remarks seriously). Accordingly, the Court will dismiss Plaintiff's Section 1981 retaliation claim.

### D.    Title VII Hostile Work Environment Claim (Temp Star)

Temp Star has moved to dismiss Plaintiff's Title VII hostile work environment and retaliation claims. ECF No. 10 at 8-12. The Court will first address the hostile work environment claim. To plead a hostile work environment claim under Title VII, a plaintiff must allege that (1) he suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability.

*Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Temp Star argues that Plaintiff has failed to adequately plead all requisite elements of this claim.

To prevail on his hostile work environment claim, Plaintiff must plausibly allege that Temp Star was his joint employer for purposes of Title VII. That inquiry will turn on whether there is an agency relationship between the Dometic Defendants and Temp Star. *See Lara*, 2020 WL 5211206, at *12-13 (applying common-law agency test in employment discrimination case involving staffing agency that placed the plaintiff with defendant employer).

Under the common-law agency test articulated by the Supreme Court in *Nationwide Mutual Insurance Co. v. Darden*, a court may consider a variety of factors, including "the location of the work; the duration of the relationship between the parties . . . the extent of the hired party's discretion over when and how long to work; [and] the method of payment[.]" *Id.* at *12 (quoting *Darden*, 503 U.S. 318, 323 (1992)). The Third Circuit, applying *Darden*, has emphasized three specific factors: "'(1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) its day-to-day supervision of employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes, and the like.'" *Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 366 (E.D. Pa. 2020) (quoting *Plaso v. IJKG, LLC*, 553 F. App'x 199, 203-04 (3d Cir. 2014)).

Plaintiff has failed to raise any non-conclusory allegations suggesting that Temp Star had an agency relationship with the Dometic Defendants. Plaintiff merely alleges that he was placed at Dometic "by and through" Temp Star, and that Temp Star communicated with him to convey

11

that he had been terminated.  *See* ECF No. 5 ¶¶ 14, 27.  He does not allege that Temp Star

directly paid him, had the authority to fire him, was involved in the termination decision, set his

conditions of employment, or was otherwise involved in his day-to-day supervision.  *See*

*McDonald's*, 504 F. Supp. 3d at 366; *compare to Lara*, 2020 WL 5211206, at *13 (finding

plaintiff adequately pleaded staffing agency was joint employer for purposes of Title VII and

Section 1981 where he alleged the agency paid him); *Modlin v. Piazza Mgmt. Co.*, 23cv279,

2023 WL 7386682, at *3-5 (E.D. Pa. Nov. 7, 2023) (finding plaintiff adequately pleaded

defendant was a joint employer under Title VII where plaintiff's daily work and disciplinary

procedures were governed by defendant).

The only other allegations related to the relationship between the Dometic Defendants

and Temp Star are entirely conclusory.  *See* ECF No. 5 ¶ 13 ("At all times material and relevant

hereto, Marine Acquisition, Dometic, and Temp Star acted as joint employers of Plaintiff); *id.* ¶

75 ("Defendant Temp Star acted as a joint employer with the Dometic Defendants and is

accordingly responsible for the same sex harassment by his supervisor that culminated in a

hostile work environment.").  These conclusory allegations cannot be credited as true.  *See Iqbal*,

556 U.S. at 679.

Because there are no plausible allegations suggesting that Temp Star may be liable as

Plaintiff's joint employer under Title VII, the Court need not reach the issue of whether Plaintiff

adequately pleaded the other elements of his hostile work environment claim.  The Court will

therefore grant Temp Star's motion to dismiss this claim.

### E.      Title VII Retaliation Claim (Temp Star)

The Court will also grant Temp Star's motion to dismiss Plaintiff's retaliation claim.  To

state a claim for retaliation under Title VII, a plaintiff must allege that (1) he engaged in

protected activity; (2) the employer took a materially adverse action against him; and (3) there was a causal connection between the protected activity and the employer's action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Temp star argues that Plaintiff fails to plausibly allege the third prong. *See* ECF No. 10 at 12.

Although Temp Star focuses on the causal connection requirement, Plaintiff's claim fails at the second prong—adverse action by an employer. *See LeBoon*, 503 F.3d at 232. All that Plaintiff alleges that Temp Star did is communicate to Plaintiff that his employment with Dometic ended and replaced him with another individual after Plaintiff's termination. *See* ECF No. 5 ¶ 27 ("Defendant Temp Star contacted Plaintiff and told him that he had been terminated."); *id.* ¶ 30 ("Upon information and belief, rather than address the discriminatory and retaliatory treatment, Defendant Temp Star replaced Plaintiff at Dometic with another individual."). Plaintiff's allegations are deficient for two reasons.

First, as a threshold matter for all Title VII claims, a plaintiff "must demonstrate the existence of an employment relationship with the defendant employer." *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 212 (3d Cir. 2012) (internal quotations omitted); *accord Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). As discussed above, *see supra* at 11-12, Plaintiff does not allege any non-conclusory facts suggesting that Temp Star was his joint or sole employer. Absent an employment relationship, Temp Star cannot be liable to Plaintiff under Title VII. *See Faush*, 808 F.3d at 212.

Second, even assuming Temp Star was a joint employer, Plaintiff has made no allegations that it was involved in the Dometic Defendants' termination decision other than communicating that decision to him and eventually supplying a replacement. *See* ECF No. 5 ¶¶ 27-30. In other words, it is not evident that *Temp Star*—rather than Dometic—took any adverse action against

him.  *See LeBoon*, 503 F.3d at 232; *see also Barone v. Idexcel, Inc.*, 22cv01232, 2023 WL 146240, at *3 (M.D. Pa. Jan. 10, 2023) (to state a claim for Title VII retaliation against staffing agency, plaintiff must allege that staffing agency, "as his sole or joint employer, took an adverse employment action against him") (internal quotations omitted).  The Court will accordingly grant Temp Star's motion to dismiss Plaintiff's Title VII retaliation claim.

### F.       Leave to Amend

Courts have broad discretion to grant leave to amend "when justice so requires."  *See* Fed. R. Civ. P. 15(a)(2).  The Federal Rules express "'a preference for liberally granting leave to amend' unless 'amendment would cause undue delay or prejudice, or that amendment would be futile.'"  *Riley*, 2024 WL 4137310, at *6 (quoting *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000)).  That preference is even stronger in civil rights cases.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007).

Here, Plaintiff requested that should the Court grant any portion of Defendants' motions to dismiss, he be allowed to amend his complaint.  *See* ECF No. 15-1 at 6 n.1.  None of the Defendants have argued that amendment would be futile.  *See generally* ECF No. 16-1; *see also* ECF No. 11-1 at 9 (agreeing that Plaintiff should be able to file an amended complaint providing a more definite statement of his claims should the Court deny any portion of Defendants' motion to dismiss).  The Court will therefore grant Plaintiff leave to amend his complaint.

## IV.        CONCLUSION

For the reasons stated above, the Court will grant both the Dometic Defendants' and

Temp Star's motions to dismiss.  An appropriate Order will follow.


**BY THE COURT:**


MARY KAY COSTELLO
United States District Judge